United States District Court
Southern District of Texas
**ENTERED**
July 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SUNNY SHORES, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO. H-13-2745 |
| | § |
| UNITED CONTINENTAL | § |
| HOLDINGS, INC., et al., | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Defendant United Airlines, Inc.'s Motion for Summary Judgment (Doc. 82), the response thereto (Doc. 94) and a reply brief (Doc. 96).  For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **GRANTED**.

## I.  Case Background

Plaintiff Sunny Shores ("Shores") filed this action against her former employer, United Airlines, Inc. ("United") complaining of failure to accommodate and retaliatory discharge under the Americans With Disabilities Act ("ADA"), and interference and retaliatory discharge under the Family and Medical Leave Act ("FMLA").[1]

Shores was employed by Continental Airlines[2] in 1994 as a

---

[1]    Although Shores checked the "Race" box on her administrative charge of discrimination, her live complaint failed to allege race discrimination.  See Doc. 1, Compl.  Thus, the court deems that claim abandoned.

[2]    In 2010, Continental Airlines was acquired by United.

reservation agent and, in 1997, became a flight attendant.[3] Relevant to the present dispute, Shores requested, and was granted, medical leave on several occasions when she or a family member was ill.[4]

In October 2001, Shores sustained an on-the-job injury when pulling an aft bar cart.[5] After two surgeries in 2003, she was considered to have reached maximum medical improvement with a thirty-five percent impairment rating in October 2003.[6] Shores continued to complain of shoulder, neck and thoracic pain and remained sidelined from work while doctors debated whether her complaints of pain required additional surgery, stemmed from psychological distress, or were symptomatic of a narcotic dependency.[7]

On October 4, 2007, Shores underwent a functional capacity evaluation and was found to be capable of work at the medium exertional level.[8] Two physicians recommended that she be returned to work with no restrictions.[9]   A fitness-for-duty exam was

---

[3]    See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Employment Checklist, Receipt of Training Acknowledgment, pp. 2-3 of 82.

[4]    Id. Certifications of Medical Leave, dated 1998-2000 pp. 4-15 of 82.

[5]    Id. First Rept. of Injury p. 18. of 82

[6]    Id. Fitness for Duty Exam Dated Oct. 12, 2009 p. 24 of 82.

[7]    Id. pp. 25-32 of 82.

[8]    Id. p. 32 of 82.

[9]    Id.

scheduled for June 4, 2008, but was not administered because Shores' son broke his arm and she left the examination to be with him.[10]

On October 12, 2009, a fitness-for-duty examination performed by Zvi Kalisky, M.D., found that Shores was able to perform work at a medium exertional level but was not able to return to work as a Flight Attendant because she was unable to lift seventy-five pounds, pull/push a 150-pound life raft with another flight attendant or lift or assist a passenger with another person, which were specific requirements for that position.[11]

As allowed by the collective bargaining agreement, Shores opted to obtain a second evaluation to establish her fitness for duty.[12] Shores was found fit for duty and returned to work in late January 2010.[13] By April 2010, Shores was absent from work frequently, prompting her employer to counsel Shores about her attendance issues.[14] On April 28, 2010, Shores received a verbal warning for a lack of dependability after she reported late ("RL")

---

[10]    Id. p. 36 of 82.

[11]    Id. p. 34 of 82.

[12]    Id. Nov. 13, 2009 Letter to Shores p. 37 of 82.

[13]    Id. Shores' 2010 Time Sheet p. 41 of 82.

[14]    Id. Verbal Warning p. 42 of 82.

for her assigned flights on February 8, 2010,[15] April 9, 2010,[16] and April 26, 2010,[17] and called in sick ("SK") on March 13-14, 2010, and March 26-April 4, 2010.[18]

The verbal warning indicated that, as Shores had not been an active employee in the last seven out of twelve months, she was not eligible for FMLA leave.[19]  Shores was advised that this warning would remain in her file for twelve months and any future instances of lost time could result in additional discipline.[20]

On June 19, 2010, Shores reported late for work.[21]  Shores called in sick for the period of July 12-30, 2010.[22]  On August 3, 2010, Shores received a written warning for the above-cited incidents.[23]  The warning recounted the earlier verbal warning for lack of dependability and stressed the serious nature of the June

---

[15]    Id.  Shores' 2010 Time Sheet  p. 41 of 82.  Shores reported ten minutes late for her assigned flight.  Id.

[16]    Id.  Shores reported fourteen minutes late for her assigned flight.  Id.

[17]    Id.  Shores reported thirty-three minutes late for her assigned flight.  Id.

[18]    Id.  Verbal Warning p. 42 of 82.  The abbreviations are found on Shores' 2010 time sheet, and the court deduces their meanings from the context of the parties' arguments.  See id.

[19]    Id.  Thus, Plaintiff would not be eligible for FMLA leave until late August 2010.

[20]    Id.

[21]    Id.  Shores' 2010 Time Sheet p. 41 of 82.  Per Shores, she was late due to not having transportation and having to rely on others for a ride to the airport.  See Written Warning Dated Aug. 3, 2010 p. 47 of 82.

[22]    Id.  Shores' 2010 Time Sheet p. 41 of 82.

[23]    Id.  Written Warning Dated Aug. 3, 2010 p. 47 of 82.

4

19, 2010 late report-for-duty "because non-performance in this area could impact Continental's ability to properly staff flights, maintain on-time departures and prevent cancellations."[24]   The written warning was to remain in Shores' file for twelve months, and Shores was warned that future lost time or dependability issues could include additional discipline, including termination.[25]

Shores called in sick September 10-13, 2010, and, as she was then eligible for FMLA leave, submitted paperwork from her health care provider, Dr. Everton Edmondson, supporting intermittent leave for Addison's disease on October 1, 2010.[26]   Dr. Edmondson indicated that Shores was first diagnosed with Addison's Disease on July 28, 2010, and was hospitalized for hypotension on September 2, 2010.[27] He estimated that Shores would experience flareups of the condition once every three months, with each episode lasting two to three days.[28]

United retroactively approved FMLA leave for her September sick calls and sent Shores a notice informing her that she was

---

[24]     Id.

[25]     Id.

[26]     Id. FMLA Paperwork Dated 10-1-2010 pp. 48-51 of 82.  Addison's Disease is marked by deficient adrenocortical secretion and characterized by extreme weakness, loss of weight, low blood pressure, gastrointestinal disturbances, and brownish pigmentation of the skin and mucous membranes. MERRIAM-WEBSTER'S MEDICAL DICTIONARY 10 (1ST ed. 1995).

[27]     Id. p. 49 of 82.

[28]     Id. p. 50 of 82.  Dr. Edmondson cautioned, "Pt. is generally well [indecipherable] but if she gets a viral infection or any extreme stress, Addison's could provoke hypotension and [indecipherable] crisis." Id. pp. 50-51.

approved for intermittent FMLA leave for the period September 5, 2010, through December 5, 2010.[29]  The notice also stated that, if Shores needed intermittent leave after the approved period, she would have to recertify her request.[30]  In addition to the September sick days, the FMLA leave eventually covered four days sick leave in October and eight days sick leave in November.[31]

Shores called in sick on December 10-12, 2010, December 30, 2010, January 8-9, 2011.[32]  On January 20, 2011, Shores' supervisor, Veronica Hauser ("Hauser"), met with Shores to discuss her December and January sick calls and her overall dependability.[33]  It was noted that Shores attributed her absences to Addison's Disease and offered a doctor's note.[34]  Hauser discussed FMLA leave with Shores and noted that no FMLA paperwork had been received for these most recent absences.[35]  Shores was advised that her level of dependability was at an unacceptable level and that any additional instances of lost time would result in her termination.[36]  Shores

---

[29]    Id. Undated Letter to Shores re: FMLA leave p. 53 of 82.

[30]    Id.  The notice also provided information about Plaintiff's responsibility in keeping United informed about taking additional FMLA leave. Id.

[31]    Id. Shores' 2010 Time Sheet p. 40 of 82.

[32]    Id. Termination Warning Dated Mar. 4, 2011 p. 54 of 82.

[33]    Id. Activity Record p. 56 of 82.

[34]    Id.

[35]    Id.

[36]    Id.

had additional sick calls for January 28-29, 2011, and February 2-4, 2011, but failed to submit FMLA paperwork for those absences.[37]

On February 4, 2011, Hauser spoke with Shores regarding FMLA leave which would cover her most recent absence if Shores wished to file the FMLA paperwork.[38]  On February 17, 2011, Hauser sent Shores an email that stated, "Just to follow up from my phone message, we have not received the FML from your doctor.   You may want to consider bringing it in before the 21st or it will be over the 15 days."[39]  Shores sustained additional sick calls on February 23-25, 2011, and February 28-March 3, 2011 and failed to submit the required paperwork.[40]

On March 4, 2011, Shores was placed on a termination warning.[41] That warning recounted that Shores had been counseled about her absences from work and that Hauser had discussed with Shores the FMLA requirements on February 4, 2011, and February 11, 2011, and stressed the importance of following up to ensure that the

---

[37]     Id.

[38]     Id.

[39]     Id.  Email dated Feb. 17, 2011 p. 57 of 82.  Under the applicable FMLA regulations, "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification."  29 C.F.R. § 825.305(b).

[40]     Id. Activity Record p. 56 of 82.

[41]     Id.

paperwork was received for processing.[42]

On March 16, 2011, Shores submitted FMLA paperwork dated March 7, 2011, purporting to cover her absences starting on February 2-4, 2011.[43]  That form recounted Shores' diagnoses of Addison's Disease and orthostatic hypotension with tachycardia beginning in 2009 and explained that Shores had been hospitalized on February 2-4, 2011.[44] The form stated that Shores "can work regular duty," and "Pt. may intermittently have symptoms."[45]  When asked on the form about the frequency of flareups, the doctor refused to directly answer, stating, "Not estimatable, but likely take less and less as treatment takes effect."[46]

In a letter dated March 7, 2011, Shores' physician also stated that Shores had reviewed her symptoms with him on February 23, 2011, and was advised to increase medication dosage to improve her blood pressure.  He estimated she could return to work on February 26, 2011.[47]

On March 29, 2011, United denied Shores FMLA leave because the FMLA paperwork was submitted outside the fifteen-day period.

---

[42]     Id.

[43]     See Doc. 96-1, Ex. 1 to Def.'s Reply Brief, FMLA Form Dated Mar. 7, 2011 pp. 5-8 of 27.

[44]     Id. p. 6 of 27.

[45]     Id.

[46]     Id. p. 7 of 27.

[47]     Id.  Letter from Dr. Edmondson Dated Mar. 7, 2011 p. 9 of 27.

A note on the FMLA worksheet noted, "Late submittal.  Deadline for 2/23 absence was 3/9.  Form submitted 3/16.  2/28 absence was due to OI and not related to FML condition."[48]

After the March 4th termination warning was received, Shores called in sick on March 22-25, 2011, and April 28, 2011.  On May 2, 2011, Shores submitted a FMLA form filled out by her physician that covered only the April 28th sick call.[49]  The form identified April 28, 2011, as the approximate date that the condition commenced and stated, "Last week on 4/28/11 she got dizzy secondary to low BP.  She promptly recovered w/ [indecipherable] salt."[50]  The physician estimated that FMLA leave would be needed one time per four weeks, but failed to indicate the duration of each episode.[51]

On May 10-15, 2011, Shores called in sick.[52]  On May 12, 2011, United emailed Shores and informed her that it had received her request for FMLA leave on May 2, 2011, but that additional information was required "on the form" from Shores' doctor before her FMLA leave request could be approved.[53]  The email cautioned,

---

[48]    Id. FMLA Worksheet p. 4 of 27.  Shores' time sheet described Shores' February 28th absence as "OJI," which the court interprets as "on-the-job-injury."  See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Shores' 2011 Time Sheet p. 55 of 82.

[49]    See id. FMLA Form pp. 69-72 of 82.

[50]    Id. p. 70 of 82.

[51]    Id. p. 71 of 82.

[52]    Id. p. 55 of 82.

[53]    Id. Email Dated May, 12, 2011 p. 73 of 82.

"You must provide the following information TO YOUR SUPERVISOR no later than seven days from receipt of this message or your leave may be denied."[54]  The email designated the requested information as "An explanation/estimation of the frequency and duration of your expected intermittent leave is needed on the certification form (Question #7)."[55]  On May 14, 2011, Shores' supervisor again reminded Shores to submit her FMLA paperwork.[56]  On May 29, 2011, Shores' FMLA request was denied because the information was not received by the deadline of May 27, 2011.[57]

Shores called in sick on June 6-8, 2011, and again on August 2-3, 2011.[58]  On August 5, 2011, Shores again was advised to submit FMLA paperwork to cover her absences but Shores failed to follow up with any medical documentation requesting leave for those dates.[59]

On September 16, 2011, Shores was terminated for lack of dependability.[60]  At the termination conference, United cited its efforts to obtain family medical leave requests from Shores to

---

[54]    Id.

[55]    Id.

[56]    Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J. Email Dated May 14, 2011 p. 66 of 82.

[57]    See Doc. 96-1, Ex. 1 to Def.'s Reply Brief, FMLA Worksheet Dated Apr. 6, 2011 p. 13 of 27.

[58]    Id.

[59]    Id.

[60]    See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Termination Letter Dated Sept. 16, 2011 p. 74 of 82.

10

excuse Shores' above-cited sick calls.[61]   United recounted that it had offered family medical leave on March 23, 2011, but Shores failed to respond in a timely fashion and that Shores failed to follow up on her May 2, 2011 FMLA leave request by submitting additional information by May 27, 2011.[62]   Shores also failed to request FMLA leave for her June or August 2011 absences.[63]

Shores challenged her termination by filing a union grievance.[64]   The first-step grievance hearing was held on November 18, 2011.[65]   Shores was represented by her union.[66]   Shores did not contest that she failed to request FMLA leave or to follow up by supplying the requested information.[67]   Shores argued United should have been aware of her condition and her need for the leave.[68]   The hearing officer denied the grievance, finding that Shores' supervisor went "beyond what could reasonably be expected" in attempting to get properly completed family medical leave paperwork from Shores.[69]   The hearing officer concluded that Shores' conduct

---

[61]     Id.

[62]     Id.

[63]     Id.

[64]     Id. Hearing Officer's Dec. Dated Nov. 28, 2011 pp. 76-77 of 82.

[65]     Id.

[66]     Id. p. 76 of 82.

[67]     Id. pp. 76-77 of 82.

[68]     Id. p. 77 of 82.

[69]     Id.

showed "a disturbing level of non[]responsiveness to communications by her supervisor which were clearly intended to assist her."[70]

Shores' second-step grievance was denied on March 6, 2012.[71] On March 9, 2012, the union appealed the grievance to the System Board of Adjustment.[72]  On August 2, 2013, the union withdrew its appeal of Shores' grievance.[73]

On February 15, 2012, Shores filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[74]  In the complaint, Shores complained that she was discriminated against on the basis of her race and disability when her FMLA requests were denied.[75]  She also complained that the FMLA denials were in retaliation for a 2008 complaint of discrimination.[76]  On September 18, 2013, Shores was mailed her right-to-sue letter.[77]

On September 17, 2013, Shores filed this suit against United, the Association of Flight Attendants Council 64 and the

---

[70]    Id.

[71]    Id. Step Two Decision Dated Mar. 6, 2012, p. 79 of 82.

[72]    Id. Appeal to System Board of Adjustment pp. 80-81 of 82.

[73]    Id. Union Letter Dated Aug. 2, 2013 p. 82 of 82.

[74]    See Doc. 82-4, Ex. 4 to United's Mot. for Summ. J., Charge of Discrimination p. 3 of 5.

[75]    Id.

[76]    Id.

[77]    Id. Notice of Right to Sue p. 5 of 5.

International Association of Machinists and Aerospace Workers District 142 ("IAMAW").[78]   Discovery has been completed and on December 30, 2015, United filed the pending motion for summary judgment.   On March 15, 2015, Shores filed her response in opposition, and, on March 21, 2016, United filed a reply brief.[79]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary

---

[78]   See Doc. 1, Pl.'s Compl. p. 1.  The unions have been dismissed from this suit.  See Docs. 17, 43, Orders of Dismissal.

[79]   See Doc. 94, Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J.; Doc 96, Def.'s Reply.

judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory

allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III.  <u>Analysis</u>

The court interprets Shores' complaint to raise claims of interference and retaliation under the FMLA and the ADA.  United moves for summary judgment of all of Shores' claims.

### A.  <u>FMLA</u>

The FMLA entitles an eligible employee to a total of twelve weeks of leave each year for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); <u>Haley v. Alliance Compressor LLC</u>, 391 F.3d 644, 649 (5th Cir. 2004). The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the act and from discriminating or retaliating against an employee who exercises her FMLA rights or who opposes an act made unlawful by the FMLA.  29 U.S.C. § 2615(a);

see also Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005);  Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 975 (5th Cir. 1998).

### 1.  Shores' FMLA Interference Claim

To prevail on an FMLA interference claim, Shores must show that United either interfered with her rights under the FMLA or that United did not respect her entitlement to FMLA leave by discouraging her from pursuing such leave. Bell v. Dallas Cnty., 432 F. App'x 330, 334 (5th Cir. 2011)(unpublished).  The applicable Department of Labor regulation provides that "interfering with" the exercise of an employee's rights would "include, for example, not only refusing to authorize FMLA leave but discouraging an employee from using such leave."  29 C.F.R. § 825.220(b).

The Fifth Circuit has employed a five-factor test to establish a case of FMLA interference.  See Lanier v. Univ. ov Tex. Sw. Med. Ctr., 527 F. App'x 312, 316 (5th Cir. 2013)(unpublished).  Shores must show: (1) that she was an eligible employee; (2) United was an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) United denied her the benefits to which she was entitled.  United contests Shores's ability to offer evidence on the third and fifth elements.

United argues that Shores cannot show that she was entitled to FMLA leave or that United denied her FMLA leave to which she was

entitled because she failed to timely submit a complete medical certification as required by United's policy regarding FMLA leave. The applicable regulations allow an employer to require its employees to comply with "the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d).[80]  The regulation goes on to state, "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."  Id.

Under a Letter of Agreement between United and the IAMAW, United "may require medical certification for FMLA leave and will be using the prescribed Department of Labor model form."[81]   That Department of Labor form notified the employee:

> The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition.  If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections.  29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request.  20 C.F.R. § 825.313. [sic] Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).[82]

---

[80]    The regulation stated an example of an unusual mitigating circumstance would be when the call-in number's voice mail box is full.  29 C.F.R. § 825.302(d).

[81]    Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Letter Agreement Dated June 15, 1994 p. 44 of 82.

[82]    Id. p. 48 of 82.

The form also instructed the health care provider as follows:

> Your patient has requested leave under the FMLA.  Answer, fully and completely, all applicable parts.  Several questions seek a response as to the frequency or duration of a condition, treatment, etc.  Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient.  Be as specific as your can; terms such as "lifetime," "unknown," or "indeterminate," may not be sufficient to determine FMLA coverage. . . ."[83]

Shores submitted an FMLA leave request on October 1, 2010, which covered intermittent absences during the prior month and estimated that her need for leave into the future would be once over the following two-month period and that the leave would be for two to three days.[84] Consistent with this request, United granted Shores FMLA leave for the period September 5, 2010, through December 5, 2010.  Shores was instructed that if she needed leave after December 5, 2010, a new certification would be required.[85]

Shores then was absent on December 10-12, 2010, December 30, 2010, January 8-9, 2011, January 28-29, 2011, February 2-4, 2011, February 23-25, 2011, and February 28-March 3, 2011.[86]  Despite repeated prompting by United management to Shores for submission of FMLA leave certification, and only after receiving the March 4,

---

[83]    Id.

[84]    Id. FMLA Form Dated Oct. 1, 2011 p. 50 of 82.

[85]    Id. FMLA Notice p. 52 of 82.

[86]    A note indicates that the Feb. 28 2011 absence was for an on-the-job injury, not the FMLA condition.  See Doc. 96-1, Ex. 1 to Def.'s Reply Brief, FMLA Leave Cover Sheet p. 4.

2011 termination warning, did Shores submit any FMLA paperwork. That paperwork, submitted on March 16, 2011, appeared to cover only the absences between February 2-4, 2011.[87]

The regulations allow an employer to set a fifteen-day deadline for the submission of FMLA paperwork, and United did so. See 29 C.F.R. §§ 825.302(d), 825.305(b). United denied Shores' March 2011 request on the grounds that it was submitted over three weeks outside the fifteen-day deadline. As it is undisputed that Shores' March FMLA request failed to comply with United's usual and customary notice and procedural requirements and the regulations allow an employer to deny a FMLA request for failure to comply with such requirements, it follows that the FMLA request was not wrongfully denied by United. The court concludes that Shores has not raised a fact issue on her interference claim based on the March 2011 FMLA request.[88]

Shores was absent from work on March 22-25, 2011, and April 28, 2011. On March 23, 2011, Shores' supervisor advised her to file FMLA paperwork to cover the March absences.[89] On May 2, 2011, Shores timely submitted FMLA paperwork for the April 28, 2011 sick call. On the form, Shores' physician stated that on April 28,

---

[87]    Id. FMLA Leave Form, p. 6 of 27.

[88]    Shores offers no explanation for her failure to timely request FMLA leave for her December and January absences or include all her absences between December 2010 and March 2011 in this March request.

[89]    Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Email Dated Mar.23, 2011 p. 65 of 82.

2011, Shores got dizzy as a result of low blood pressure and recovered promptly with the administration of a prescribed salt.[90] In answer to Question 7, which inquired about the frequency and duration of the absences required from flare-ups of the condition, Shores' physician indicated that the frequency was one time every four weeks, but failed to fill in the portion of the question that asked about the duration of each flare-up.

On May 12, 2011, United informed Shores by email that additional information was required on Question 7 before her FMLA leave request could be approved.  Shores was told that she had seven days from receipt of the message to submit the required information or her leave request could be denied.[91]

It is undisputed that Shores' physician failed to completely fill out the "Duration" portion of Question 7, that Shores was informed of the deficiency, that Shores was instructed to remedy the deficiency within a stated period of time and that Shores failed to submit any information as requested.  On May 29, 2011, Shores was notified that her FMLA leave request was denied because the additional information had not been received by May 27, 2011.

In response to summary judgment, Shores offers no explanation

---

[90]    As noted earlier, the doctor's handwriting is indecipherable.

[91]    The applicable Department of Labor regulation states, "A certification is considered incomplete if the employer receives a certification but one or more of the applicable entries have not been completed."  29 C.F.R. § 825.305(c).  The applicable regulation requires an employer to give an employee seven days to cure any incomplete FMLA certification request.  See id.

20

for her failure to submit the requested information within the required time frame.[92]  The court concludes that Shores has not raised a fact issue that she was entitled to FMLA leave with respect to the May 2011 request.

Accordingly, United is entitled to summary judgment on Shores' interference claim.

### 2.  FMLA Retaliation

The FMLA prohibits employers from discharging an employee for exercising her FMLA rights.  29 U.S.C. § 2615(a).  Retaliation claims under the FMLA are analyzed under the McDonnell Douglas burden-shifting framework.  Wheat v. Fla. Parish Juv. Just. Comm'n, 811 F.3d 702, 705 (5th Cir. 2016).

An employee who claims she was discharged in retaliation for exercising her rights must first establish a prima facie case of retaliation by showing she was (1) protected under the FMLA; (2) suffered an adverse employment action; and (3) treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection

---

[92]    In Shores' response to summary judgment, she attached a June 7, 2011 "To Whom It May Concern" letter from her physician that explained that if stress prompted an Addisonian crisis, that crisis could last for a variable period of time ranging from hours to days.  See Doc. 94, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J. Letter from Everton A. Edmondson p. 58 of 86.  Although authenticated by Shores in Doc. 102 as a document she either received in discovery or provided to United during discovery, there is no indication that this document was ever presented to United at or near the time reflected on the document.  Even if it had been, the letter's date indicates that it was still untimely and cannot form the basis of an FMLA interference claim.

under the FMLA.[93]  Ion v. Chevron USA, Inc., 731 F.3d 379, 390 (5th Cir. 2013)(citing Mauder v. Metro. Transit Auth., 446 F.3d 574, 583 (5th Cir. 2006)).  United argues that Shores cannot offer evidence on the first and third elements.

United first posits that, because Shores failed to submit a timely and complete medical certification for FMLA leave, she was not protected by the FMLA.  The court disagrees.  Section 2615(a)(1) of the FMLA states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Additionally, Section 2615(b) prohibits retaliation against an individual for instituting a proceeding under the FMLA, giving information in connection with a proceeding under the FMLA or testifying in a proceeding relating to any right under the FMLA. The court interprets these sections broadly and finds that the attempt to exercise a right under the FMLA, even if incomplete or ultimately denied by the employer, triggers the anti-retaliation provision of Section 2615(b).

As to the third prong of a prima facie case, Shores points to the relatively short periods of time between her two applications

---

[93]   In Richardson, 434 F.3d at 333, the court applied a mixed-motive standard to the causation requirement of the McDonnell Douglas burden-shifting framework.  However, in Univ. of Tex. Sw. Med Ctr. v. Nassar, ___ U.S. ___, 133 S.Ct. 2517, 2533 (2013), the Supreme Court applied a "but for" causation standard to a Title VII retaliation claim.  The Fifth Circuit has not decided whether Nassar should be extended to FMLA retaliation claims.  See Wheat, 811 F.3d at 705-06.  The court thus applies the mixed-motive standard to the present action.

for FMLA leave - submitted in March and May 2011 - and her September 2011 termination to support this element.  A short period of time between the protected activity and the retaliation may provide the necessary causal connection to satisfy a prima facie case of retaliation.  In <u>Evans v. City of Houston</u>, 246 F.3d 344, 354 (5th Cir. 2001), the court noted that a time lapse of up to four months was found sufficient to satisfy the causal connection in the summary judgment context, but in <u>Russell v. Univ. of Tex. at Permian Basin</u>, 234 F. App'x 195, 207 (5th Cir. 2007)(unpublished), the court found that evidence of a six-month gap alone was not enough to raise an inference of causation.  Acknowledging that the relevant time lapses here are four and six months, the court errs on the side of caution and finds that the fairly close time lapse between the exercise of protected activity and Shores' termination satisfies the third element of her prima facie case for both FMLA requests.

Once a Shores has established a prima facie case, the burden shifts to United to proffer legitimate, non-discriminatory reasons for its adverse employment action.  <u>Richardson</u>, 434 F.3d at 333. Here, United's termination letter set forth Shores' seventeen unexcused sick days arising out of five sick calls dating from the March 4, 2011 termination warning through August 3, 2011.[94]  The

---

[94]   <u>See</u> Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Termination Letter Dated Sept. 16, 2011 pp. 63-63 of 82.

letter reminded Shores that regular and predictable attendance was an essential function of a flight attendant's job.  The letter explained that when there were more than four absences during any twelve months of active service discipline may be escalated and, after consideration of Shores' work record, length of service and seriousness of all of her infractions, United was terminating her employment.

The court finds that this letter, along with the other notices to Shores regarding her unexcused absences, satisfy United's McDonnell Douglas burden.  The burden shifts to Shores to show that United's reason for termination is a pretext for discrimination or that United had a discriminatory or retaliatory motive in addition to the legitimate reason.[95]  Richardson, 434 F.3d at 333.

Here, Shores simply argues that United interfered with her FMLA leave applications and she would have had excused absences if the FMLA leave applications had been approved.  Shores also argues that she should have been offered a "last chance" in lieu of termination and that United's requiring a fitness for duty examination in 2008 as a condition precedent to her return to work is further evidence of a retaliatory motive.

Here, Shores has failed to meet her burden of showing a mixed motive for retaliation.  In fact, the evidence shows only one

---

[95]   Shores does not offer any evidence of pretext.

motive for Shores' termination, that being her unexcused absences that Shores failed to remedy despite numerous requests by United that she file the appropriate FMLA paperwork.

In the present case, Shores was advised that if she needed FMLA leave after December 5, 2010, she would have to recertify her request for leave.[96] After that leave expired, Shores' supervisor spoke with Shores on January 20, 2011, about Shores' need to submit FMLA paperwork to excuse her absences in December 2010 and January 2011.[97] Shores was also counseled on February 4 and February 11, 2011, about the importance of submitting FMLA paperwork to cover additional unexcused absences. On February 17, 2011, Shores was reminded to submit FMLA paperwork on or before February 21, 2011, or it would be deemed untimely.[98] Shores took no action and consequently received a termination warning on March 4, 2011.[99]

On May 5, 2011, Shores was again counseled to submit FMLA paperwork to cover subsequent sick calls.[100] Shores was advised that her May 2, 2011 FMLA paperwork was incomplete and that she failed to timely correct the deficiency. Shores was advised on May 14, 2011, and again on August 5, 2011, to submit FMLA paperwork to

---

[96]    Id. Notice of Grant of FMLA Leave p. 53 of 82.

[97]    Id. Termination Warning Dated Mar. 4, 2011 p. 54 of 82.

[98]    Id. Email Dated Feb. 17, 2011 p. 57 of 82.

[99]    Id.

[100]   Id. Activity Record p. 56 of 82.

cover her recent sick calls.  Shores failed to submit any paperwork after those promptings by United.

Additionally, Shores has failed to show that a similarly situated comparator was treated more favorably or was offered a "last chance" opportunity under similar circumstances.  As discussed above, Shores has failed to offer any excuse for her untimely and/or incomplete submission of FMLA paperwork.

Finally, the court finds that Shores' FMLA-protected activity in 2008 is too remote in time to raise a fact issue of retaliation. See <u>Evans</u>, 246 F.3d at 354.  For the reasons discussed above, the court concludes that Shores has failed to raise a material issue of fact that her termination was in retaliation for the exercise of her rights under the FMLA and United is entitled to summary judgment on Shores' FMLA retaliation claim.[101]

## B.  <u>ADA</u>

Title I of the ADA prohibits discrimination by employers against qualified individuals with disabilities "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); <u>see also</u> <u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356,

---

[101]   Because Shores failed to raise a fact issue of a retaliatory motive, the court does not consider whether United has established as a matter of law that it would have terminated Shores despite its retaliatory motive.  <u>See</u> <u>Ion</u>, 731 F.3d at 394 (finding that once the plaintiff established a retaliatory motive, it was the defendant's burden to prove that it would have terminated the plaintiff despite that motive).

360-61 (2001).  The ADA prohibits employers from discriminating "on the basis of disability in regard to . . . [the] discharge of employees."  42 U.S.C. § 12112(a).  Discrimination against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

**1.  Interference Claim**

An employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A).  The employee bears the burden of requesting a reasonable accommodation.  <u>Jenkins v. Cleco Power, LLC</u>, 487 F.3d 309, 315 (5th Cir. 2007).  After the employee requests an accommodation, "the employer and the employee should engage in a flexible, interactive discussion to determine the appropriate accommodation."  <u>EEOC v. Chevron Phillips Chem. Co.</u>, 570 F.3d 606, 621 (5th Cir. 2009).  Where the breakdown of the interactive process is attributable to the employer's unwillingness to make a good faith effort to reasonably accommodate a qualified employee, the employer violates the ADA.  <u>Id.</u>  However, the employer will not be found liable where the breakdown in the accommodation process is attributable to the employee.  <u>Id.</u>

A plaintiff claiming a violation of the ADA must meet the

burden-shifting framework of <u>McDonnell Douglas</u> by making a prima
facie showing that (1) she is disabled; (2) she is qualified for
her job; (3) she was subjected to an adverse employment action on
account of her disability; and (4) that she was replaced by, or
treated less favorably than, non-disabled employees.  <u>Id.</u> p. 615.
Once a plaintiff has made this showing, the burden shifts to the
employer to articulate a legitimate, non-discriminatory reason for
its adverse employment action.  <u>Id.</u>  After the employer has done
so, the plaintiff must show that the employer's reason is either
pretextual or that the employer's articulated reason for the
adverse action was only one reason for the adverse action and the
employer was also motivated to take the adverse action due to the
plaintiff's disability.  <u>Id.</u>

Turning to the first element, Shores may adduce evidence that
she is disabled by showing that she: (1) has a physical or mental
impairment that substantially limits one or more major life
activities; (2) has a record of such impairment; or (3) is regarded
as having such impairment.  <u>Atkins v. Salazar</u>, 677 F.3d 667, 675
(5th Cir. 2011).  It appears undisputed that Shores has Addison's
Disease, and, when she has a flare-up of that disease, low blood
pressure prevents Shores from engaging in the major life activity
of working.[102]  Shores meets the <u>Atkins</u> criteria.

---

[102]  <u>See</u> Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., FMLA Leave
Application Dated Oct. 1, 2010 pp. 48-51 of 82.  Working is a major life
activity.  <u>See</u> 42 U.S.C. § 12102(2)(A).

Shores must next show that she is a "qualified individual" under the ADA by offering evidence that she, "with or without reasonable accommodation, can perform the essential functions of [her] employment position . . . ." 42 U.S.C. § 12111(8). The ADA counsels that once a request for accommodation has been made by an employee, it may be necessary for the employer to initiate an informal, interactive process in order to craft a reasonable accommodation. Silva v. City of Hildalgo, Tex., 575 F. App'x 419, 423 (5th Cir. 2014)(unpublished). However, a person who cannot perform any of the functions of her position is not a "qualified individual" under the ADA because indefinite leave is not a reasonable accommodation. Delaval v. Ptech Drilling Tubulars, L.L.C., ___ F.3d ___, 2016 WL 3031069 at *4 (5th Cir. May 26, 2016)("Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."); Dorsey v. Boise Cascade Co., 611 F. App'x 212, 213-14 (5th Cir. 2015)(unpublished)("Moreover, 'indefinite leave' until a worker recovers enough to work is not a reasonable accommodation."); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996)("[R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected . . . .").

Here, Shores argues that she is a qualified individual because

she could have performed her job on some days if she were granted unlimited sick leave for those days when she was unable to work. This is the essence of indefinite, intermittent leave that courts have held to be not available as a reasonable accommodation under the ADA.  See Delaval, ___ F.3d ___, 2016 WL 3031069 at *4.

The Fifth Circuit has held that regular attendance is generally an essential element of most jobs, and that excessive absences, even if related to a disability, are not protected activity under the ADA because they render the plaintiff to be "not otherwise qualified" to perform her job functions.  Hypes on Behalf of Hypes v. First Commerce Corp., 134 F.3d 721, 726-27 (5th Cir. 1998); Rogers. v. Int'l Marine Terminals, 87 F.3d 755, 759-60 (5th Cir. 1996).

In Hypes, the court found that it was an essential function of the plaintiff's job, as a member of a team, to be in the office, regularly, as near to normal business hours as possible, and to work a full schedule.  Id. at 726.  Because the plaintiff could not perform this function,[103] he was "not otherwise qualified" to perform the functions of his position and was unable to prevail under the ADA after he was discharged for tardiness and excessive absences.  Id. at 727.

Here, the summary judgment evidence showed that United

---

[103]    There, the plaintiff regularly came to work as late as 10:30 a.m. to 1:00 p.m. and, almost as often, failed to come to work at all.

expected its flight attendants to have dependable work attendance.[104] Last minute sick calls put strain on United's flight operations and were considered grounds for disciplinary action.[105] The record shows that Shores called in sick on March 13-14, 2010, March 26-April 4, 2010, July 12-30, 2010, December 10-12, 2010, December 30, 2010, January 8-9, 2011, January 28-29, 2011, February 2-4, 2011, February 23-25, 2011, February 28-March 3, 2011, March 22-25, 2011, April 28, 2011, June 6-8, 2011, and August 2-3, 2011.[106] She reported late on February 8, 2010, April 9, 2010, and April 26, 2010, and June 19, 2010.[107]

Based on her inability to work a regular schedule and have dependable attendance, Shores has not shown that she is a qualified individual under the ADA.

Moreover, even if the court were to proceed with the McDonnell Douglas analysis, Shores' claim fails because there is no admissible evidence that Shores sought any accommodation for the symptoms of her Addison's Disease other than FMLA leave. As Shores failed to comply with United's FMLA policies and failed to state a

---

[104]   See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., FMLA Termination Warning Dated Mar. 4, 2011 p. 54 of 82; Activity Rec. Dated Jan. 20, and May 5, 2011 p. 56 of 82; Termination Letter Dated Sept. 16, 2011 pp. 63-64 of 82.

[105]   Id. p. 54 of 82.

[106]   See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Time Sheets for 2010 and 2011 pp. 41, 55 of 82.  Shores was granted FMLA leave for sick calls on September 10-13, 2010, October 28-30, 2010, November 4, 2010, and November 28, 2010.  Id. p. 41 of 82.

[107]   See Doc. 82-1, Ex. 1 to Def.'s Mot. for Summ. J., Time Sheets for 2010, p. 41 of 82.

FMLA interference claim, the court will not permit Shores to make an end run around the FMLA requirements by allowing her to recharacterize the denial of FMLA leave as an ADA interference claim.

United has set forth a legitimate, non-discriminatory reason for its termination, that is, Shores' inability to work her flight schedule in a dependable manner. United has met its burden to show that it had a legitimate, non-discriminatory reason for its decision to terminate Shores and the onus shifts to Shores to show that United's reason for terminating her was either pretextual or motivated by her disability.

Shores fails to meet her burden of raising a fact issue of either pretext or mixed motive. The record reflects that United requested, on numerous occasions, that Shores submit medical documentation to excuse her sick calls. Other than requesting FMLA leave, Shores failed to request any other reasonable accommodation and often failed to communicate at all with her supervisors concerning her absences. The court concludes that Shores has failed to raise a triable issue of fact concerning her ADA interference claim and the court should grant United's motion for summary judgment on this claim.

## 2. Retaliation

In order to state a claim for unlawful retaliation under the ADA, Shores must make a prima facie case by showing (1) that she

32

engaged in an activity protected by the ADA; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the protected act and the adverse action. Conner v. La. Dept. of Health & Hosps., 534 F. App'x 245, 248 (5th Cir. 2013)(unpublished) (citing Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999)). Shores may satisfy the causal connection prong of an ADA retaliation claim by showing a close timing between the employee's protected activity and the adverse action. Feist v. La. Dep't of Justice, Office of the Att'y Gen., 730 F.3d 450, 454-55 (5th Cir. 2013). However, the temporal connection must be "very close." Id.

If Shores establishes a prima facie case of retaliation, the burden shifts to United to provide a legitimate, non-discriminatory reason for the adverse action. Seaman v. CSPH, Inc., 179 F.3d at 301. If United meets its burden, then Shores must come forward with sufficient evidence that "but for" the protected activity, the adverse action would not have occurred. Id.

It is not clear that Shores took any protected action under the ADA because she never requested an accommodation under the Act. As outlined above, Shores only requested FMLA leave due to her inability to work when scheduled. Even if the court were to find that Plaintiff's unexcused absences were caused by a disability, and that she met the other prongs of a prima facie case of

33

retaliation,[108] for the reasons outlined above, United has produced evidence supporting its legitimate, non-discriminatory reason for its termination of Shores.  Shores then has the ultimate burden of showing that "but for" her engaging in a protected activity regarding her disability, she would not have been terminated.  <u>Seaman</u>, 179 F.3d at 301.

Shores has failed to raise a fact issue that she was terminated for any reason other than her unexcused sick calls. Accordingly, the court should grant United's motion for summary judgment on this claim.

## IV.  <u>Conclusion</u>

It is therefore **RECOMMENDED** that United's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Proposed Findings and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

---

[108]    <u>See</u> <u>Hypes</u>, 134 F.3d at 726 (commenting that even if the excessive absences were a pretext for termination on the basis of a disability, the plaintiff's claim failed because the plaintiff was still not "otherwise qualified" for protection under the ADA).

United States District Clerk electronically.    Copies of such
objections shall be mailed to opposing parties and to the chambers
of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

    **SIGNED** in Houston, Texas, this 19th day of July, 2016.

_____
U.S. MAGISTRATE JUDGE